PAN AMERICAN TRADE AND INVESTMENT CORPORATION, a Delaware corporation, AMERICAN RAIL AND STEEL Co., a Delaware corporation, and MILTON E. CANTER,
Plaintiffs below, Appellants,

*vs.*

COMMERCIAL METALS COMPANY, a Delaware corporation,
Defendant below, Appellee.

COMMERCIAL METALS COMPANY, a Delaware corporation,
Defendant below, Appellee and Cross-Appellant,

*vs.*

PAN AMERICAN TRADE AND INVESTMENT CORPORATION, a Delaware corporation, AMERICAN RAIL AND STEEL Co., a Delaware corporation, and MILTON E. CANTER,
Plaintiffs below, Appellants and Cross-Appellees.

*Supreme Court, On Appeal, July 1, 1963.*

*George T. Coulson,* of Morris, Nichols, Arsht & Tunnell, Wilmington, *Milton E. Canter and Philip A. Ryan,* Washington, D. C., for appellants and cross-appellees.

*John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, for appellee and cross-appellant.

TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.

WOLCOTT, Justice: This cause is before this Court for the second time. The suit is one for an accounting between joint venturers. The Vice Chancellor held that there was in fact a joint venture between the parties, and ordered the defendant, Commercial Metals Company, to account to the plaintiffs, setting forth the principles to

be followed, in that accounting. He refused, however, to compel the plaintiffs to account to the defendant.

From this judgment the defendant appealed. We affirmed the holding that a joint venture existed between the parties, and the direction to the defendant to account to the plaintiffs. However, we reversed the holding that the plaintiffs were not required to account to the defendant. We affirmed the rulings upon the details of the defendant's accounting with the exception of the refusal to permit the deduction of certain legal expenses incurred by the defendant. The cause was thereupon remanded for further proceedings in accordance with the opinion. See *Commercial Metals Co. v. Pan American Trade & Inv. Corp.*, 39 Del.Ch. 234, 163 A.2d 264.

The facts of the cause are stated at some length in our prior opinion and will not be repeated here. Suffice it to say that the parties were in disagreement as to whether they had agreed upon a joint venture to purchase and resell the rails of a railroad leading from Carrabelle to Tallahassee, Florida. The plaintiffs were successful over the opposition of the defendant in maintaining that the joint venture was agreed upon with each side "sharing equally in expenses, investment, and profit or loss."

The finding of joint venture raised a further issue urged by the defendant as to whether or not the plaintiffs should be required to account to it for the profit from the resale by plaintiffs of 1000 tons of the Carrabelle rail which the plaintiffs had purchased from the defendant after its purchase of the entire Carrabelle line. We held that an accounting must be made by the plaintiffs as to their profit. The current appeals are taken by both parties from rulings made in the course of that accounting. We will state the questions and our rulings upon them in order.

Initially, however, we think it necessary to state exactly what we held in the first appeal, since both sides take different views as to what it was precisely. We do so because fundamentally the questions raised in these appeals are answered by this holding.

The facts upon which the first ruling was made were that the parties agreed to enter into a joint venture to acquire and resell particular items of property, *viz.,* the rails of the Carrabelle railroad. The defendant purchased the joint venture property without the knowledge of the plaintiffs who, thereafter, attempted to assert their rights as joint venturers. This attempt was rejected by the defendant. The plaintiffs thereupon purchased from the defendant a part of the joint venture property, 1000 tons of rail, and resold it at a profit. Ultimately, the plaintiffs brought suit in the Court of Chancery to compel the defendant to account for the profit made by it on the resale of the balance of the joint venture property.

We regarded the plaintiffs' suit as an attempt by them to enforce the agreement of joint venture. They were successful in that attempt and so, by an accounting, were entitled to be put in the same position they would have been in had the joint venture been carried out from the beginning. Under the agreement to be enforced between the parties, this meant that each side was to share equally in the profits. Obviously, therefore, a mutual accounting was required to establish the profit made from the resale of all the joint venture property, including the 1000 tons purchased from the defendant and resold by the plaintiffs.

We refused to permit the plaintiffs to claim half the profits made by the defendant, including the profit on the sale of 1000 tons to them, and at the same time deny to defendant its share of the profit made by them on the resale of the 1000 tons. We applied the maxim that he who seeks equity must do equity, and directed that the final result put the parties in the positions of equality required by their agreement.

The plaintiffs argue that we held the defendant to be a wrong-doer, it having attempted to breach the agreement, but we did not. On the contrary, we held that if the plaintiffs' rights under the joint venture agreement were unaffected by the defendant's attempt to exclude them from the joint venture, by the same token their duties under the agreement were unaffected. Having made their election to enforce the agreement of joint venture, they would not be per-

mitted to avoid the duties that agreement cast upon them. The primary duty of both sides to the agreement was to share all profits from the resale of all the joint venture property. We accordingly remanded the cause for further accounting in order to equalize the positions of the parties. We intended that each side be given what it would have been entitled to had the agreement been carried out from the beginning. Obviously, this requires a mutual accounting of profits and the same treatment of both sides in making that accounting.

We turn now to the questions raised by these cross-appeals. The parties disagree with several rulings of the Vice-Chancellor on particular items in dispute.

■ The plaintiffs claim the Vice Chancellor committed error in allowing only $2,000 to them for legal expenses. On the other hand, the defendant contends that no allowance at all for legal expenses should have been made.

Of course, an allowance of legal expenses may be made only if they were incurred in connection with the joint venture. Plaintiffs' claim for legal expenses arises as follows: The 1000 tons of Carrabelle rail were resold by plaintiffs as part of a total of 10,000 tons of rail to India Supply Mission. After receipt of the total shipment, India Supply Mission claimed that a large portion of the shipment was defective and brought suit to compel arbitration. The bill for legal services for which plaintiffs now claim to be obligated was incurred in the ultimately successful defeat of the demand for arbitration. Plaintiffs were therefore able to retain the entire purchase price.

Plaintiffs claim that all of the Carrabelle rail purchased from defendant was defective, and that this material comprised 32% of the defective material, of which 16% is properly chargeable to the defendant. Since the total obligation for legal services was $27,947.39, the plaintiffs claim that the defendant's share of that bill is 16% or $4,471.58. The Vice Chancellor, however, allowed only $2,000.

Plaintiffs' theory is predicated upon the assumption that the whole of the Carrabelle rail purchased from the defendant was de-

fective. We think, however, that the record does not support this proposition. The only direct evidence upon the point is that on two occasions separate inspections of the rail were made by competent inspectors and the condition of the rail was found to be satisfactory. The only contrary evidence is an affidavit of the individual plaintiff to the effect that he had been informed by India Supply Mission that all the rail shipped from Panama City, Florida, was defective, and that only the Carrabelle rail had been shipped from that point. We think, however, that it has not been shown satisfactorily that the Carrabelle rail was defective.

However, it seems plain to us that the joint venture is responsible for some part of the legal expense incurred. We say this because, irrespective of its condition, the Carrebelle rail was part of a large contract which had been attacked as a whole. It therefore became necessary to defend this claim in order to protect the sale not only of the whole but of the portion represented by the Carrabelle rail as well. Without the successful defense of the action, the realization of a profit to the joint venture might well have been jeopardized. A portion, therefore, of the expense of defense is properly chargeable to the joint venture.

The record unfortunately is bare of any precise allocation of cost. This the Vice Chancellor recognized. He in effect allocated a total of $4,000 of $27,000 legal costs to the Carrabelle rail or approximately 15%. The 1000 tons of Carrabelle rail was 10% of the total shipment. In the absence of specific proof, we cannot say that the Vice Chancellor's allowance as a deduction of $2,000 as the defendant's share is unreasonable and, accordingly, this allowance is affirmed.

■ Next, the plaintiffs claim error in the denial by the Vice Chancellor of any allowance for overhead. Plaintiffs' cliam for overhead is based upon 3.33% of its total sales for 1949 and 1950, which it is claimed consisted solely of the sale to India Supply Mission. The Vice Chancellor refused to make any allowance for the reason that these expenses were mere estimates and were in the same situation as the defendant's estimated expenses which had been

disallowed by him. This Court affirmed this disallowance in the first appeal.

Plaintiffs argue that they are in a different position than the defendant in this respect, but we think not. In this accounting both sides are to receive equal treatment. Either both must be given the right to deduct overhead expenses, or both must be denied the right. The defendant having been denied the right, equality of treatment requires that the plaintiffs receive a similar denial. The disallowance of overhead expenses is affirmed.

■ Next, the plaintiffs claim an allowance for income taxes paid on the defendant's share of the profit from the Carrabelle rails. This claim was disallowed by the Vice Chancellor basically on the theory that the parties must be treated equally, which requires both sides to account to the other on the basis of gross profits since, presumably, the defendant had paid taxes on the plaintiffs' share of the profit for which it was required to account. We think this ruling was correct in that it established as nearly as possible equality. It is therefore affirmed.

■ Finally, the plaintiffs argue that the Vice Chancellor committed error in allowing interest as damages on the profit made by the plaintiffs to the date of the original decree. However, a similar allowance was made on the plaintiffs' share of the profit for which the defendant must account. Again, equality of treatment of these co-adventurers requires that interest be added to the profit for which the plaintiffs must account.

The judgment below is affirmed.